**Bruce A. SMITH, Plaintiff,**

v.

**CITY OF ATLANTA and Joint City–County Board of Tax Assessors, Defendants.**

Civil Action No. 1:93–CV–2385–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 6, 1997.

Bruce A. Smith, Atlanta, GA, for Plaintiff.

Clifford E. Hardwick, IV, Joe M. Harris, Jr., Office of Atlanta City Attorney Law Department, Teri Jeanne Ellis–Brown, Charles George Hicks, Atlanta, GA, for Defendants.

### ORDER

FORRESTER, District Judge.

This employment discrimination action is before the court on Plaintiff's appeal from the adverse judgment entered against him in a bench trial held on his claims by Magistrate Judge William L. Harper, and on this court's *sua sponte* inquiry into its subject matter jurisdiction.

### I. Statement of the Case

On October 21, 1993, Plaintiff Bruce A. Smith filed a *pro se* suit against Defendants City of Atlanta, Joint City–County Board of

Tax Assessors, Webster Pope, Johnny Johnson, and John Lavelle, alleging job discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* On July 14, 1994, Defendants Pope, Johnson, and Lavelle filed a motion for judgment on the pleadings. This court adopted the Magistrate Judge's Report and Recommendation that their motion be granted on March 30, 1995. The remaining Defendants and Plaintiff consented to a trial before Magistrate Judge William L. Harper in accordance with the provisions of 28 U.S.C. § 636(c). At that time, the parties consented to take any appeals from the magistrate judge's decision directly to a judge of the U.S. District Court pursuant to 28 U.S.C. § 636(c)(4). After a trial, Magistrate Judge Harper concluded that the Plaintiff had failed to prove his claims of job discrimination and retaliation. Accordingly, the magistrate judge entered judgment for the Defendants on March 25, 1996. On April 5, 1996, Plaintiff filed a notice of appeal to the U.S. District Court, indicating an intent to appeal the magistrate judge's order.

The parties have filed their briefs according to the briefing schedule established by this court in an earlier order. The court now makes a *sua sponte* inquiry into its jurisdiction to entertain this appeal. *See Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.,* 68 F.3d 409, 414 (11th Cir.1995) (whenever doubt as to jurisdiction arises, court should resolve the matter before proceeding further).

## II. Discussion

### A. Jurisdiction

■ At the time this litigation was commenced and at the time Plaintiff filed his notice of appeal, 28 U.S.C. § 636(c)(1) provided that parties in a civil action could consent to have a magistrate judge handle all the proceedings in their action up to and including the issuance of a final judgment. This code section also allowed parties to agree that an appeal from the magistrate judge's final order would lie with the district court instead of the court of appeals. *See* 28 U.S.C. § 636(c)(4) (West 1996). The section was not a waiver of the right to appeal to a

circuit court, as the parties could petition the court of appeals for leave to appeal from the district court's order if they so desired. *See* 28 U.S.C. § 636(c)(5). On October 19, 1996, however, Congress passed the Federal Court's Improvement Act of 1996 ("FCIA"), Pub.L. 104–317, § 207, 104 Stat. 3847 (Oct. 19, 1996). This Act deleted sections 636(c)(4) and 636(c)(5) and their provisions dealing with an appeal to the district court, thereby effectively establishing that the only avenue of appeal from a magistrate judge's final order would be to the court of appeals. *See* 28 U.S.C. § 636(c)(3) (West 1997); *Darnell v. Rossen,* 116 F.3d 187, 188 (6th Cir.1997). As a result, district courts today have no jurisdiction to hear appeals from magistrate judges' final judgments even if the parties consent. *Darnell,* 116 F.3d at 188.

The question the court must resolve is whether the FCIA divests it of jurisdiction to continue to hear this appeal. In *Darnell,* the Sixth Circuit dealt with the impact of the FCIA. *Id.* at 187. In that case, the parties had agreed under the old version of section 636 to proceed before a magistrate judge and to have any appeal proceed to the district court. In February 1997, the magistrate judge issued an order denying in part the defendant's motion for summary judgment on qualified immunity grounds. *Id.* at 188. The defendant, after first filing a notice of appeal to the district court, amended the notice to make the appeal proceed to the Sixth Circuit. *Id.* The Sixth Circuit then considered whether, in light of the parties' earlier consent to appeal first to the district court, it had jurisdiction to hear the appeal. *Id.* The court concluded that FCIA's change to section 636(c) was "solely jurisdictional in nature" and that it took "away no substantive right but simply change[d] the tribunal that is to hear the case ." *Id.* (citing *Landgraf v. USI Film Products,* 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). As a result, the Sixth Circuit held that the FCIA changes were applicable to all cases pending before a magistrate judge pursuant to section 636(c)(1) at the time the new legislation was enacted, October 19, 1996. *Id.*

The court recognizes that this case is factually distinguishable from *Darnell* in that

Plaintiff filed his notice of appeal prior to the enactment of the FCIA. However, the court does not believe that this distinction matters. In the early 1980s, for example, there was a provision in the 1978 Bankruptcy Code that allowed parties to consent to a direct appeal to the court of appeals from certain bankruptcy court decisions. *See* 28 U.S.C. § 1293(b); *In re General Coffee Corp.*, 758 F.2d 1406, 1407 (11th Cir.1985). Congress, however, passed a new law that went into effect on July 10, 1984 and effectively replaced the direct appeal provision. *See* 28 U.S.C. § 158 (the "Act"); *In re General Coffee Corp.*, 758 F.2d at 1407. As a result of the amendment, appellate courts to consider the issue held that they had no jurisdiction to hear direct consent appeals filed after the effective date of the new Act. *See, e.g., In re General Coffee*, 758 F.2d at 1409; *In re Exclusive Ind. Corp.*, 751 F.2d 806, 808 (5th Cir.1985). Furthermore, in a situation analogous to the present case, the Third Circuit decided that the 1984 Act applied "to matters pending before the effective date of the Act but not decided until after that date." *See In re Amatex Corp.*, 755 F.2d 1034, 1037 (3d Cir.1985). The court reached this conclusion on the grounds that it should apply the law in effect at the time it rendered its decision unless manifest injustice, statutory directives, or legislative history indicated otherwise. *Id.* at 1037. As a result, before delving into the merits of an appeal filed prior to the Act's effective date, the court analyzed whether it had jurisdiction under the terms of the new bankruptcy law. *Id.* at 1037–38. Only after finding that it did have a basis for jurisdiction under the new Act did the court address the merits. *Id.* at 1038; *see In re Rubin*, 769 F.2d 611, 615 n. 4 (9th Cir.1985); *In the Matter of Riggsby*, 745 F.2d 1153 (7th Cir.1984).[1]

Moreover, recent authority clearly indicates that this court lacks jurisdiction over this appeal. The leading Supreme Court decision on the retroactive application of new statutes is *Landgraf*, 511 U.S. at 274. In that case, the Court stated that, absent clear congressional intent, statutes affecting substantive rights should normally not be applied retroactively. *Id.* at 280. However, the court acknowledged that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at 274.[2] The Court reasoned that new jurisdictional rules should be applied to pending cases because they usually did not take away any substantive rights. *Id.* Instead, such rules spoke "to the power of the court" to hear the action and not the rights of the parties. *Id.* (quoting *Republic Nat. Bank of Miami v. U.S.*, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)). As a result, the Court stated that application of a new jurisdictional rule to a pending case in most instances merely "changes the tribunal that is to hear the case." *Id.* (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)).

Applying *Landgraf*, for example, several circuit courts have recently concluded that changes in the Immigration and Nationality Act ("INA"), § 241(a)(2)(A)(ii), 8 U.S.C.A. § 1251(a)(2)(A)(ii) deprived them of jurisdiction to hear appeals pending at the time the INA was amended. *See Boston–Bollers v. I.N.S.*, 106 F.3d 352, 354–55 (11th Cir.1997); *Figueroa–Rubio v. I.N.S.*, 108 F.3d 110, 111 (6th Cir.1997). In *Boston–Bollers*, the plaintiff filed a petition for review of an order deporting him under the INA on April 17, 1996. At the time he filed his petition, the INA conferred on the Eleventh Circuit juris-

---

**1.** The court notes that two other courts, without analyzing the issue, simply stated that they had jurisdiction to decide, after the effective date of the new Act, direct consent appeals that were filed prior to the Act's effective date. *See In re Jones*, 804 F.2d 1133, 1135 & n. 5 (10th Cir. 1986); *In re Quanta Resources Corp.*, 739 F.2d 927, 928 (3d Cir.1984). Due to their lack of analysis, however, this court does not find these cases persuasive on this point.

**2.** In *Bruner v. United States*, 343 U.S. 112, 116–17, 72 S.Ct. 581, 96 L.Ed. 786 (1952), for example, the Supreme Court ordered an action dismissed because the jurisdictional statute under which the case had been filed was repealed after its filing. Since the legislation repealing the jurisdiction did not provide a savings clause referring to pending actions, the Court concluded that the new legislation ousted the district court of jurisdiction to hear the claim. *Id.*

diction to review final orders of deportation. 8 U.S.C. § 1105a(a); *Boston–Bollers,* 106 F.3d at 354. However, on April 24, 1996 the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (1996). One of the provisions in the AEDPA stated that final orders of deportation would not be subject to review in any court. *Boston–Bollers,* 106 F.3d at 354. Finding that application of the AEDPA amendment to pending petitions for review would be merely the prospective application of a jurisdiction-eliminating statute, the Eleventh Circuit held that the amendment deprived it of jurisdiction over the appeal. *Id.* at 354–55. As a result, it dismissed the pending petition for review. *Id.* at 355.

In the present case, the FCIA eliminated the jurisdiction of this court to hear consensual appeals from magistrate judges' final judgments when it was enacted on October 19, 1996. *See Darnell,* 116 F.3d at 188. After careful consideration, the court finds that application of the FCIA to this case would not be a retroactive application affecting substantive rights, but instead would be "prospective application of a jurisdiction eliminating statute." *See Boston–Bollers,* 106 F.3d at 354–55. Accordingly, this court concludes that it lacks jurisdiction over Plaintiff's appeal.

### B. Transfer of Appeal

■ Having reached this conclusion, the court must still decide how to handle Plaintiff's pending appeal. Pursuant to 28 U.S.C. § 1631, the court may, if it is in the interests of justice, transfer the appeal to any other court in which it could have been brought at the time it was noticed, and "the . . . appeal shall proceed as if it had been . . . noticed for the court to which it is transferred on the date upon which it was actually . . . noticed for the court from which it was transferred."

*See Slatick v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor,* 698 F.2d 433, 434 (11th Cir. 1983). In this case, if the court were to dismiss the appeal, then the time for filing an appeal from the magistrate judge's final order would have expired. *See* Fed. R.App. P. 4. If no extenuating or unique circumstances were found to excuse an untimely notice of appeal, Plaintiff would be barred from having his appeal heard. The court therefore believes that it would be in the interests of justice to transfer the appeal to the Eleventh Circuit. *See Slatick,* 698 F.2d at 434.

In order to transfer the action, however, the court must find that the appeal could have been noticed in the Court of Appeals on April 5, 1996. Under the statutory scheme existing at the time, the Eleventh Circuit had jurisdiction to entertain a direct appeal pursuant to 28 U.S.C. § 636(c)(3) at that time. As this court now lacks jurisdiction, the agreement to have it heard here is unenforceable. Accordingly, since the conditions for transfer under section 1361 have been met, the court will transfer the appeal to the Eleventh Circuit Court of Appeals.

### III. Conclusion

Upon *sua sponte* inquiry, the court finds that it lacks jurisdiction over this appeal. Pursuant to 28 U.S.C. § 1361, the court DIRECTS the Clerk of Court to treat Plaintiff's April 5, 1996 notice of appeal as if it were noticed to the Eleventh Circuit Court of Appeals and to transfer this appeal to that court.